THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JANA REED, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF | § | |
| THE ESTATE OF CHRISTOPHER REED | § | |
| AND ON BEHALF OF A.R. (A MINOR); | § | |
| LOGAN REED, AND CHASE REED | § | |
| *Plaintiffs* | § | C.A. NO. 3:19-cv-00238 |
| | § | |
| V. | § | 9(H) Admiralty |
| | § | |
| MAERSK LINE-LTD, USA AND | § | |
| MAERSK LINE, LIMITED | § | |
| *In Personam Defendants;* | § | |
| M/V MAERSK IDAHO | § | |
| *In Rem defendant.* | § | |

## MAERSK LINE, LTD'S OPPOSED MOTION FOR APPLICATION OF TEXAS CIVIL PRACTICE AND REMEDIES CODE CHAPTER 33

HOLMAN FENWICK WILLAN USA LLP

**James T. Brown**
Texas Bar No. 03138150
Federal ID. No. 11656
5151 San Felipe, Suite 400
Houston, TX 77056
Phone: (713) 917-0888
Fax:   (713) 953-9470
jim.brown@hfw.com
**ATTORNEY-IN-CHARGE FOR DEFENDANT MAERSK LINE, LIMITED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES .................................................. iii

I. BACKGROUND & SUMMARY .................................2

II. ISSUE PRESENTED .................................................. 5

III. THE LAW ................................................................6

    A. The admiralty jurisdiction of the federal courts allows adjudication of claims under state wrongful death and survival statutes ...................................................6

    B. The general maritime law wrongful death remedy created in *Morange* did not displace state wrongful death and survival remedies which still remain available to claimants in federal court. Plaintiff has sued under the Texas Wrongful Death and Survival Acts. ...................................................7

    C. A federal court adjudicating a state wrongful death/survival right of action must enforce that right as an integrated whole under state law *cum onere* with whatever conditions and limitations the creating state attaches.  This preserves state sovereignty over deaths of non-seamen by maritime torts upon state waters ....................................................... 9

    D. *Yamaha v. Calhoun* – the death of a recreational non-seaman boater in state waters ...................................................13

    E. In the Plaintiffs' Texas wrongful death and survival claims now at bar, the negligence of the parties must be adjudicated using the Proportionate Responsibility Act of Texas (Chapter 33 of the Texas Civil Practice Remedies Code) and not the pure comparative fault scheme of the general maritime law ....................16

    F. The Fifth Circuit is in accord ...........................................17

i

G.    The Supreme Court of Texas is in accord  ..........................................21

H.    Other jurisdictions  ...............................................................23

I.     "Maritime but local:" Goal of uniformity under general
        maritime law is not offended..............................................26

IV.    CONCLUSION  ........................................................................30

# TABLE OF AUTHORITIES

## Cases

*Bilbrey v. Weed,* 215 So.2d 479 (Fla. 1968) ..........................................................5, 23

*Blome v. Aerospatiale Helicopter Corp.*, 924 F. Supp. 805 (S.D. Tex. 1996) ........29

*Blome v. Aerospatiale Helicop*, 114 F.3d 1184 (5th Cir. 1997) ............................29

*Byrd v. Napoleon Avenue Ferry Co.*, 125 F.Supp 573 (E.D. La. 1954) .................20

*Calhoun v. Yamaha*, 40 F.3d 622 (3rd Cir. 1994) ..............................................*passim*

*Continental Cas. Co. v. The Benny Skou*, 200 F.2d 246 (4th Cir. 1952) ................26

*Cromartie v. Stone*, 140 S.E. 612 ( N.C. 1927) ......................................................24

*Dale v. Ala. Acquisitions I, Inc.*, 434 F.Supp.2d 423 (S.D. Miss. 2006) ................17

*Feige v. Hurley*, 89 F.2d 575 (6th Cir. 1937) ........................................................25

*Garrett v. Moore-McCormack Co.*, 317 U.S. 239 (1942) ................................14, 15

*Graham v. Lusi*, 206 F.2d 223 (5th Cir. 1953) ...................................................5, 19

*Hartford v. Gulf Refining Co.*, 230 F.2d 346, 350 (5th Cir. 1956) ...........................5

*Hess v. U.S.*, 361 U.S. 314 (1960) ...................................................................*passim*

*Hill v. Waterman S.S. Corp.*, 251 F.2d 655 (3rd Cir. 1958) ...................................25

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* 513 U.S. 527
    (1995) ...................................................................................................................8

*Matter of Oil Spill by Amoco Cadiz*, 954 F.2d 1279 (7th Cir. 1992) .....................17

*Monongahela River Consol. v. Schinnerer*, 196 F. 375 (6th Cir. 1912) ................25

*Mooney v. Carter* 152 F. 147 (5th Cir. 1907) ..................................................19, 20

*Moragne v. States Marine Lines, Inc.*, 388 U.S. 375 (1970) ...........................*passim*

*Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986) .........................4, 16, 17

*Quinette v. Bisso*, 136 F. 825 (5th Cir. 1905) ...............................................3, 5, 17, 18

*Railway Exp. Agency v. Mallory*, 168 F.2d 426 (5th Cir. 1948) .............................18

*Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959)...............................14

*Southern Pacific v. Jensen*, 244 U.S. 205 (1918) .....................................................28

*State Dept. of Highways v. Dopyera*, 834 S.W.2d 50 (Tex. 1992) (cert. denied 113 S. Ct. 636 (1992)..............................................................................21, 22, 23

*The Harrisburg*, 119 U.S. 199 (1886) ..................................................................3, 7

*The Tungus v. Skovgaard*, 358 U.S. 588 (1959).................................................*passim*

*Truelson v. Whitney & Bodden Shipping Co.*, 10 F.2d 412 (5th Cir. 1928)......18, 19

*Western Fuel Co. v. Garcia*, 257 U.S. 233 (1921) .........................................3, 27, 28

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 US 310 (1955) ........................14

*Yamaha v. Calhoun*, 516 U.S. 199 (1996)..........................................................*passim*

## Statutes

28 U.S.C.A. §§ 1331, 1333 ........................................................................... 6

46 U.S.C.A. § 767 ..........................................................................................16

U.S. Const. art. III, § II  ...............................................................................6

Fed. R. Civ. P. 9(h)  ......................................................................................6

TEX. CIV. PRAC. & REM. CODE § 71.001 et. Seq...........................................2

TEX. CIV. PRAC. & REM. CODE § 31.001................................................................5

## Secondary Sources

Robert Force, *Post-Calhoun Remedies for Death and Injury in Maritime Cases*: *Uniformity, Whither Goest Thou?,* 21 Tul. Mar. L.J. 7, 38 (1996) .......29

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JANA REED, INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE ESTATE | § | |
| OF CHRISTOPHER REED AND ON | § | |
| BEHALF OF A.R. (A MINOR); | § | |
| LOGAN REED, AND CHASE REED | § | |
| *Plaintiffs* | § | C.A. NO. 3:19-cv-00238 |
| | § | |
| V. | § | 9(H) Admiralty |
| | § | |
| MAERSK LINE-LTD, USA AND | § | |
| MAERSK LINE, LIMITED | § | |
| *In Personam Defendants;* | § | |
| M/V MAERSK IDAHO | § | |
| *In Rem defendant.* | § | |

**MAERSK LINE, LTD'S OPPOSED MOTION FOR APPLICATION OF
TEXAS CIVIL PRACTICE AND REMEDIES CODE CHAPTER 33**

TO THE HONORABLE JEFFREY VINCENT BROWN:

**COMES NOW** Maersk Line, Limited, as *in personam* Defendant and as

owner of the *M/V Maersk Idaho*, *in rem* Defendant (hereinafter collectively referred

to as "MLL" or "Maersk"), and moves for application of the Texas Proportionate

Responsibility Act, Chapter 33 of the Texas Civil Practice and Remedies Code in

this action.  In support thereof, Maersk respectively asserts as follows:

1

# I.

## <u>BACKGROUND & SUMMARY</u>

This case involves the death of a non-seaman in state waters on Galveston Bay.[1]  There is no dispute that Plaintiff was a recreational boater - not a seaman, maritime, or offshore worker.[2]  In their Third Amended Original Complaint, as well as in the three complaints that preceded it, Plaintiffs seek damages exclusively under the Texas Wrongful and Survival Acts: "Maersk's . . . breaches of these duties caused the death of Chris Reed, and the damages which flow from those breaches are shown below [Texas Wrongful Death and Survival Acts cited]."[3]

With regard to the wrongful death actions, Plaintiffs specifically plead: "Plaintiffs, Jana Reed, Logan Reed, Chase Reed, and Alexis Reed bring this claim under the Texas Wrongful Death Act.  TEX. CIV. PRAC. & REM. CODE § 71.001 *et. seq.*"[4]  With regard to the survival action by the Estate of Christopher Reed, Plaintiff pleads:  "In connection with her cause of action under the Texas Survival Statute, Jana Reed, in her capacity as personal representative of the Estate of Christopher

---

[1] Plaintiff's Third Amended Original Complaint at ¶ 5 [Dkt. 32].

[2] *Id.* at ¶¶ 6, 16 ("Chris and his wife of twenty-nine years, Jana, decided to take an early afternoon fishing trip on Galveston Bay.  . . . He was not a seaman or a maritime worker.").

[3] *Id.* at ¶ 29.

[4] *Id.* at ¶ 31.

Reed, is entitled to recover . . . all damages sustained by Christopher Reed prior to his death . . . ."[5]

Plaintiffs also plead for pre- and post-judgment interest under the substantive laws of Texas:  "Plaintiffs are entitled by law to recover pre-judgment and post-judgment interest . . . and now sue for recovery, **as allowed by the laws of the State of Texas**."[6]

The jurisdiction of federal admiralty courts, such as this one, to entertain suits based upon state wrongful death and survival acts has been recognized for over 100 years.[7]  Prior to 1970, there was no wrongful death remedy under the general maritime law for a death of a non-seaman in state waters.[8]  In 1970, however, the Supreme Court created a general maritime law wrongful death remedy for the death of a longshoreman in state waters in *Moragne v. States Marine Lines, Inc.*[9]  *Moragne* did not foreclose a non-maritime worker's right to choose state wrongful death and survival remedies in lieu of the general maritime law *Moragne* remedy, as the Plaintiffs have chosen herein.  In states such as Texas, wrongful death claimants

---

[5] *Id.* at ¶ 50.

[6] *Id.* at ¶ 51.

[7] *See, e.g., Western Fuel Co. v. Garcia*, 257 U.S. 233, 241 (1921); *Yamaha v. Calhoun*, 516 U.S. 199, 202-03 (1996).  Circuit precedent is in accord.  *See* Quinette *v. Bisso*, 136 F. 825, 838 (5th Cir. 1905).

[8] *The Harrisburg*, 119 U.S. 199 (1886).

[9] *Moragne v. States Marine Lines, Inc.*, 388 U.S. 375 (1970).

often choose the state wrongful death/survival acts as they provide for greater categories of damages than does the general maritime law.

In *Yamaha v. Calhoun*, 516 U.S. 199 (1996), the Supreme Court held that the *Moragne* wrongful death remedy does <u>not</u> "result in the automatic displacement of state law" and that available remedies "are properly governed by state law."[10] Further, as a matter of state sovereignty, it is well settled that a federal admiralty court adjudicating a death claim under a state wrongful death or survival act: "must enforce that right as an integrated whole with whatever conditions and limitations the creating State enacted." *The Tungus*, 358 U.S. 588, 592 (1959); *Hess v. U.S.*, 361 U.S. 314, 315, 318 (as death claim brought under Oregon Wrongful Death Act, "liability must be determined in accordance with the laws of that place.").  In an action for wrongful death in state territorial waters the conduct said to give rise to liability is to be measured not under the admiralty standards, but under the substantive standards of state law.  *Hess v. U.S.* at 319 ("Admiralty courts when invoked to protect rights rooted in state law, endeavour to determine the issues in accordance with the substantive law of the State.").[11]

In the case at bar, Supreme Court precedent, Fifth Circuit  precedent, and Supreme Court of Texas precedent call for application of Texas substantive law in

---

[10] *Yamaha v. Calhoun*, 516 U.S. at 206, 216.

[11] Defenses such as contributory negligence are substantive.  *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 233 (1986)

4

adjudicating Plaintiff's Texas wrongful death and survival claims to the exclusion of conflicting federal rules.  This includes the law governing the respective negligence of the parties which should be analyzed under the Texas Proportionate Responsibility Act to the exclusion of the pure comparative fault scheme of the general maritime law.[12]   As this Court is enforcing "[t]he policy of the State Legislature in enacting a wrongful death statute . . . it is incumbent upon a court enforcing that policy to enforce it all;  **it may not pick and choose**." *Hess v. U.S.,* 361 U.S. 314, 320 (1960)(emphasis added).

## II.

## **ISSUE PRESENTED**

In a suit involving the death of a non-seaman recreational boater in state waters, must the Court evaluate the comparative fault of the parties under the Texas Proportionate Responsibility Act, TEX. CIV. PRAC. & REM. CODE § 31.001 and its

---

[12] *Yamaha v. Calhoun*, 516 U.S. 199, 209 (for wrongful death actions involving fatality of non-seaman in territorial waters, state statutes provide the standard of liability as well as a remedial remedies); *Bilbrey v. Weed*, 215 So.2d 479 (Fla. 1968) (in suit under Florida Wrongful Death Act, Florida defense of contributory negligence is a bar to recovery rather than the partial comparative fault defense of the general maritime law); *Hartford v. Gulf Refining Co*., 230 F.2d 346, 350 (5th Cir. 1956) (suit for death in Louisiana state waters brought under the Louisiana Wrongful Death Act where the Circuit Court held the claim subject "to all defenses . . . including contributory negligence, available to a defendant in the suited law.  This is, of course the general rule."); *Quinette v. Bisso*, 136 F. 825 (5th Cir. 1905) (suit for death in Louisiana state waters brought under the Louisiana Wrongful Death Act where court held state defenses "must be applied in admiralty just as if suit had been brought in the state courts, and any defenses which are open to the defendant under the jurisdiction of the state, if successfully maintained, will bar recovery under the libel."); *Graham v. Lusi*, 206 F.2d 223, 225 (5th Cir. 1953) (suit for death in Florida waters under the Florida Wrongful Death Act. Court held that all defenses available under state law were available and contributory negligence was a complete defense under Florida law.).

51% contributory negligence bar to recovery, or under the pure comparative fault scheme of the federal maritime law?

**III.**

**<u>THE LAW</u>**

**A.     The admiralty jurisdiction of the federal courts allows adjudication of claims under state wrongful death and survival statutes.**

In instant case, the Plaintiffs have appropriately pled the admiralty and maritime jurisdiction of the Court as well as Rule 9(h) of the Federal Rules of Civil Procedure.[13]   A federal admiralty court has jurisdiction to entertain a claim under a state wrongful death or survival statute.  In *The Tungus v. Skovgaard*, 358 U.S. 588 (1959), the Supreme Court was confronted with the claim for the death of a non-seaman in New Jersey waters brought under the New Jersey Wrongful Death Act in federal admiralty court.  At the beginning of its review, the Court recognized the long-settled doctrine that "where death . . . results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by a wrongful act, the admiralty courts will entertain a libel in personam for the damages sustained by those to whom such right is given."  *The Tungus* at 591 (discussing in part the contributory negligence of the Plaintiff under state law).

---

[13] Plaintiffs Third Amended Original Complaint at ¶ 4 ("This is an admiralty and maritime claim within the meaning of Article 3, Section 2 of the United States Constitution; 28 U.S.C. §§ 1331, 1333; and Rule 9(h) of the Federal Rules of Civil Procedure.").

*Yamaha v. Calhoun*, 516 U.S. 199 (1996) involved the death of a non-seaman in state waters when the decedent drove her jet ski into the side of an anchored ship. Her parents filed suit in the U.S. District Court invoking Pennsylvania's wrongful death and survival statutes. The Supreme Court recognized that the Plaintiffs had properly grounded federal jurisdiction in admiralty, as well as in diversity of citizenship. The Court noted "the exercise of admiralty jurisdiction, however . . . does not result in automatic displacement of State law."[14]

**B.** **The general maritime law wrongful death remedy created in *Moragne* did not displace state wrongful death and survival remedies which still remain available to claimants in federal court.**

Prior to the 1970 *Moragne*[15] decision, the federal maritime law "did not afford a wrongful death cause of action." *Yamaha v. Calhoun*, 516 U.S. at 206, 216; *The Harrisburg* 119 U.S. 199 (1886). The *Yamaha* court asked: "Does the federal maritime claim for wrongful death recognized in *Moragne* supply the exclusive remedy in cases involving the death of nonseafarers in territorial waters?" *Yamaha* at 205. The defendant in *Yamaha* argued that the general maritime law remedy for wrongful death excluded death claims under state law, and therefore, the Plaintiffs were entitled only to the lesser categories of damages recognized by the general maritime law. The Court rejected the defendant's argument noting, "[t]he exercise

---

[14] *Yamaha v. Calhoun*, 516 U.S. 199, 206 (1996) (citations omitted).

[15] *Moragne v. States Marine Lines, Inc.,* 388 U.S. 375 (1970).

of admiralty jurisdiction, however, 'does not result in automatic displacement of state law.'" *Yamaha* at 206 (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S.527 (1995)).

The Court recognized that prior to *Moragne* "federal admiralty courts routinely applied state wrongful death and survivor statutes in maritime accident cases. The question before us is whether *Moragne* should be read to stop that practice." *Yamaha* at 206. The Court ruled in favor of the Plaintiffs holding that *Moragne* was an "extension of relief, and not on a contraction of remedies." *Id.* at 213. As the Plaintiffs had chosen to file suit under the state wrongful death and survival acts, the Court rejected the defendant's claim that general maritime law pre-empted the state acts and held that "the damages available to the jet ski death of Natalie Calhoun are properly governed by state law." *Id.* at 215.

The Third Circuit's scholarly opinion in *Calhoun v. Yamaha*, 40 F.3d 622 (3rd Cir. 1994) held likewise: "We conclude that the federal maritime law does not displace state wrongful death or survival statutes in this context [death of a non-seaman in territorial waters]." *Calhoun v. Yamaha*, 40 F.3d at 625. The Third Circuit rejected Yamaha's claim that the *Moragne* wrongful death cause of action displaced the Pennsylvania wrongful death and survival statutes in a case involving the death of a recreational boater in state waters. *See Calhoun v. Yamaha*, 40 F.3d at 638 (state survival act not pre-empted) and at 644 (state wrongful death act not

pre-empted). In doing so, the Third Circuit pointed out that no Supreme Court case had ever held that *Moragne* "displaces state wrongful death or survival remedies for non-seamen killed in territorial waters." *Calhoun v. Yamaha*, 40 F.3d at 638. The Circuit Court found this result "most consistent with federal/state conflict of law principles, particularly the presumption against pre-emption." *Id.*

**C.     A federal court adjudicating a state wrongful death/survival act right of action must enforce that right as an integrated whole under state law *cum onere* with whatever conditions and limitations the creating state attaches. This preserves state sovereignty over deaths of non-seamen caused by maritime torts upon state waters.**

*The Tungus*, 358 U.S. 588 (1959) involved the death of a longshoreman in state waters (it was not until 1970 the Moragne created a wrongful death remedy for longshoremen). In *Tungus*, the Plaintiffs brought suit under the New Jersey Wrongful Death Act. The primary issue in the case was whether the New Jersey wrongful death action encompassed a cause of action for death caused by unseaworthiness of a vessel. *The Tungus* at 591. The defendant argued that the Court should disregard completely any conditions which the State had put on the cause of action it created and should "apply instead the full corpus of maritime law, free from all qualifications imposed by the State." *The Tungus* at 592. The Court ruled the defendant's arguments "must be rejected. The decisions of this Court long ago established that when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, **with whatever conditions and**

9

**limitations the creating State has attached**."  *The Tungus* at 592 (emphasis added).

The Court explained: "[a]dmiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues **in accordance with the substantive law of the State**. . . . It is incumbent upon a court enforcing that policy to enforce it all; it may not pick and choose" *Id.* (emphasis added).  The Court reasoned: "It would be anomaly to hold that a State may create a right of action for death, but that it may not determine a circumstances under which that right exists.  The power of a State to create such a right includes of necessity the power to determine when recovery shall be permitted and when it shall not." *The Tungus* at 594.

The Court also gave homage to the important Constitutional issue of state sovereignty:

> It is manifest, moreover, that acceptance of the respondent's argument would defeat the intent of Congress to preserve state sovereignty over deaths caused by maritime torts within the State's territorial waters. The legislative history of the Death on the High Sea Act discloses a **clear congressional purpose to leave 'unimpaired the rights under State statutes as to deaths on water within the territorial jurisdiction of the States**.' . . . The record of the debate in the House of Representatives preceding the passage of the bill reflects deep concern that the power of the States to create actions for wrongful death in no way be affected by an enactment of the federal law.

*The Tungus* at 593 (emphasis added, citation to Congressional record omitted).

The Court went on to note:

> There is no merit to the contention that application of state law to determine rights arising from death in state territorial waters is destructive of the uniformity of the maritime law. . . . **It would be an**

**anomaly to hold that a State may create a right of action for death, but that it may not determine the circumstances under which that right exists. The power of a State to create such a right includes of necessity the power to determine when recovery shall be permitted and when it shall not.**

*The Tungus* at 594 (emphasis added, citations omitted).

The Court recognized that the Court of Appeals below had "refrained from deciding what effect **state law would have**" on the decedent's contributory negligence and assumption of the risk as the trial court made no findings in that regard. The Court left "that question to be decided if it arose on retrial." *Id.* at 595 (emphasis added).

The issue was revisited one year later by the Supreme Court in *Hess v. U.S.,* 361 U.S. 314 (1960). *Hess* involved a suit under the Oregon Wrongful Death Act for a death on a non-seaman on navigable waters within the territorial limits of the State of Oregon. The decedent was neither a seaman nor maritime worker. Rather, he was a carpenter who was performing repairs on a dam. He died when a tug boat taking him to the dam capsized and sank. *Hess,* 361 U.S. at 314-315. The Court found that since the plaintiff's death and the allegedly wrongful acts occurred within the State of Oregon, "liability must therefore be determined in accordance with the law of that place." *Hess* at 317. Under Oregon law, "the decedent's contributory negligence an absolute bar of recovery." *Id.* at *315*.

11

The Court recognized that since "death occurred on navigable waters," the matter was within reach of the federal court's admiralty jurisdiction.  *Id.* at 318.  In evaluating the choice of law issue, it reasoned:

> This means that in an action for wrongful death in state territorial waters the conduct said to give rise to liability is to be measured not under the admiralty standards of duty, but under the substantive standards of state law.  Admiralty courts, when invoked to protect rights rooted in state law endeavor to determine the issues in accordance with the substantive law of the State.

*Hess v. U.S.,* 361 U.S. at 319-20 (numerous citations omitted).

Recognizing state sovereignty, as did the *Tungus* court, the Court noted:

> [W]e find no constitutional impediment to the application, by the maritime law, of Oregon's Employers' Liability Law to a death action in which the statute otherwise by its terms applies.  We are concerned with constitutional adjudication, not with reaching particular results in given cases. . . . The policy expressed by State Legislature in enacting a wrongful death statute is not merely that death shall give rise to a right of recovery, nor even that tortious conduct resulting in death shall be actionable, but that damages shall be recoverable when conduct of a particular kind results in death.  **It is incumbent upon a court enforcing that policy to enforce it all; it may not pick or choose**.

*Hess v. U.S.,* 361 U.S. at 320 (emphasis added, citing *The Tungus,* 358 U.S. 588, 593).

Instructing that the adjudication of the Oregon Wrongful Death Act be done as an integrated whole with Oregon state law including whatever conditions and limitations that law creates, the Court held:

> It would be an anomaly to hold that a State may create a right of action for death, but that it may not determine the circumstances under which

12

that right exists.  The power of a State to create such a right includes of necessity the power to determine when recovery shall be permitted and when it shall not.

*Hess v. U.S.* at 320 (citing *The Tungus* at 594).

*The Tungus and Hess have never been overruled by the Court and remain good law.*

In the case at bar, Plaintiffs have chosen to litigate their wrongful death and survival actions under Texas law.  They must accept Texas law *cum onere*.  Texas substantive law with regard to things such as available damages, statute of limitations, and the comparative responsibility, must be used by the Court when adjudicating those claims, to the exclusion of conflicting maritime law rules, such as pure comparative responsibility.

**D.      *Yamaha v. Calhoun* – death of a recreational non-seaman boater in state waters**

The *Yamaha v. Calhoun* decision is the Supreme Court's latest pronouncement establishing that in the death of a non-seaman in state waters, the federal court has admiralty jurisdiction to adjudicate wrongful death and survival actions brought under state law.  A scholarly opinion by the Third Circuit on the choice of law issue in that case was affirmed.  In *Yamaha*, the defendant moved for summary judgement claiming the damages recoverable, if any, were governed by the federal admiralty law to the exclusion of the more generous categories of damages existing under the Pennsylvania state law.  *Calhoun v. Yamaha*, 40 F.3d

13

622, 625 (3rd Cir. 1994).  The Third Circuit held that "the federal maritime law does not displace state wrongful death or survival statutes" and that "state law rules of decision should apply." *Calhoun v. Yamaha*, 40 F.3d at 625.

Paying homage to the important constitutional issue of state sovereignty stressed by the Supreme Court in its *Tungus* and *Hess* decisions, the Third Circuit noted, "to claim that all enforced rights pertaining to matters maritime are rooted in federal law **is a destructive oversimplification of the highly intricate interplay of the States and the National Government**." *Calhoun v. Yamaha*, 40 F.3d at 627 (emphasis added, citing *Romero v. Int'l Terminal Operating Co*., 358 U.S. 354, 373-75 (1959)).  The Third Circuit recognized state and federal authorities jointly exercised regulatory authority over many maritime matters and as a result "state law can, and often does, provide the relevant rule of decision in admiralty cases." *Id.* (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 US 310, 321 (1955)).  As stated by the *Wilburn Boat* court, "[i]n the field of . . . maritime torts, the National Government has left much regulatory power in the States." *Wilburn Boat*, 358 U.S. at 313.

The Third Circuit recognized that "no Supreme Court case has explicitly held that *Moragne* displaces state wrongful death or survival remedies for non-seaman killed in territorial waters." *Calhoun v. Yamaha* at 637.  Citing the Supreme Court's *Garrett* decision, the Circuit court held it remains that "[a]dmiralty courts, when

14

invoked protect rights rooted in state law, endeavour to determine the issues in accordance with the substantive of law of the State." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 245 (1942). The Third Circuit ultimately concluded that the federal admiralty law, both statutory and common, did not pre-empt the application of the state wrongful death or survival statutes "for deaths of recreational boaters (non-seaman) within territorial waters." *Calhoun v. Yamaha* at 638, 644. As the matter would be litigated under the state wrongful death and survival acts, the court concluded that the categories of available damages "for the death of a non-seaman in territorial waters is a question to be decided in accordance with state law." *Calhoun v. Yamaha* at 644.

The high Court, in a decision written by Justice Ginsburg, quickly accepted the Third Circuit's choice of law decision rejecting Yamaha's argument that *Moragne* creates a uniform federal maritime remedy for deaths in state waters ousting all state remedies previously available. *Yamaha v. Calhoun,* 516 U.S. 199 (1996). In a discussion that included its *Tungus* and *Moragne* decisions, the Court recognized "in wrongful death actions involving fatalities in territorial waters, state statutes provide the standard of liability as well as the remedial regime." *Yamaha v. Calhoun,* 516 U.S. at 209 (1996).

Insuring that state wrongful death/survival acts did not countermand Congressional mandates, the Court pointed out that: "Congress has not prescribed

15

remedies for the wrongful deaths of nonseafareres in territorial waters." *Id.* at 628.

The Court also found it compelling that in 1920 when Congress enacted the Death

on the High Seas Act (DOHSA) creating a remedy for death outside of state waters,

it explicitly left intact State remedies in territorial waters.  Citing DOHSA, the Court

noted:  " 'The provisions of any State statute giving or regulating rights of action or

remedies for death shall not be affected by this chapter.' 46 U.S.C.A. § 767.  This

statement, by its terms, simply stops DOHSA from displacing state law in territorial

waters." *Yamaha v. Calhoun* at 628.  The Court concluded:  "Taking into account

what Congress sought to achieve, we preserve the application of state statutes to

deaths within territorial waters. . . .   [W]e hold that the damages available for the

jet ski death of Natalie Calhoun are properly governed by state law." *Yamaha v.*

*Calhoun* at 629.

**E.      In the Plaintiffs' Texas wrongful death and survival claims now at bar, the negligence of the parties must be adjudicated using the Proportionate Responsibility Act of Texas (Chapter 33 of the Texas Civil Practice Remedies Code) and not the pure comparative fault scheme of the general maritime law.**

As held by the courts above, Plaintiffs' Texas wrongful death and survival act

claims must be adjudicated using state substantive law.  Maersk respectfully asserts

that this includes the 51% bar to liability found in the Texas Proportionate

Responsibility Act.  Laws involving apportionment of on fault of are substantive and

not merely procedural. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 233

(1986).  In *Tallentire* the Court refused to allow a state wrongful death remedy to be used on the high seas as it was pre-empted by Congress' enactment of the Death of the High Seas Act remedy.  It noted "the practical significance of this difference in recovery [between the DOHSA and state wrongful death acts] is far overshadowed by the potential for serious conflicts between DOHSA and state substantive law in such areas as limitations periods, classes of beneficiaries, **and the definition of potential defenses."**  *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. at 233 (emphasis added). *See also Matter of Oil Spill by Amoco Cadiz*, 954 F.2d 1279, 1315 (7th Cir. 1992) (rules pertaining to contribution and comparative fault are substantive); *Dale v. Ala. Acquisitions I, Inc*., 434 F.Supp.2d 423, 430 (S.D. Miss. 2006) (Mississippi State laws pertaining to apportionment of fault are substantive and are to be used by federal court).

Maersk respectfully asserts that contributory negligence is a long-recognized defense and the definition of that defense under the Texas Comparative Responsibility Act must be followed in this case.

**F.     The Fifth Circuit is in accord.**

*Quinette v. Bisso* confronted the Fifth Circuit with a death in Louisiana state waters and suit brought under the Louisiana Wrongful Death Act.  The court found that the Louisiana Wrongful Death Act "must be applied in admiralty" and that "**any**

**defenses which are open to the defendant under the jurisdiction of the state**, if successfully maintained, will bar recovery under the libel."[16]

In *Truelson v. Whitney & Bodden Shipping Co.*, 10 F.2d 412 (5th Cir. 1928), the Circuit Court was confronted with a Texas case involving the death of a non-seaman in the Port Arthur Canal.  The family of the decedent brought suit under the Texas wrongful death statute arguing that the death occurred "without fault and negligence" on the part of the decedent.[17]  The court concluded that the Plaintiff had indeed been negligent and was thus "not entitled to the relief sought" because he failed "to exercise ordinary care for his own safety, proximately contributed to his death." *Truelson* at 413.

The Circuit Court found that the decedent would not have been entitled to recover even if the defendant had also been at fault, noting: "The claim asserted was based on the Texas statute giving a right of action for wrongfully causing the death of a person. Contributory negligence of the deceased is a complete defense to such an action."[18]

In adopting the comparative responsibility law of Texas then in effect, the Fifth Circuit noted: "When such a cause of action is asserted in an admiralty court,

---

[16] *Quinette v. Bisso*, 136 F. 825, 838 (5th Cir. 1905) (emphasis added); *See also Railway Exp. Agency v. Mallory*, 168 F.2d 426, 427. (5th Cir. 1948) (State statute (Mississippi) adopting comparative fault held to be part of the state substantive law).

[17] *Truelson v. Whitney*, 10 F.2d 412 (5th Cir. 1925).

[18] *Truelson* at 413.

18

it is **subject to the same defences which are open to a defendant under the jurisprudence of the state whose statute gives the right of action**."[19]

In *Graham v. A. Lusi*, the Fifth Circuit again addressed the death of a non-seaman in state waters (Florida).  Suit was brought under the Florida wrongful death statute. Contributory negligence was a complete bar to recovery under Florida law. The Fifth Court found that Plaintiff's cause of action under the Florida wrongful death statute "is to be enforced according to the principles of common law and contributory negligence and the exercise of due care are absolute defenses thereunder."[20]

The Fifth Circuit noted again that the Florida statute must be applied in admiralty just as if the suit had been brought in a state court and "any defenses which are open to the appellee under the jurisprudence of the state, if successfully maintained, will bar recovery."[21]

In *Mooney v. Carter*, the Fifth Circuit reviewed a death case filed under the Alabama Wrongful Death Act involving a ship that ran down a non-seaman in a skiff.  The boaters in the skiff were in violation a navigational rule requiring display of a white light.  *Mooney v. Carter* 152 F. 147 (5th Cir. 1907).  The defendant requested a jury instruction based upon Alabama law which barred recovery by a

---

[19] *Truelson v. Whitney,* 10 F. 2d at 413.

[20] *Graham v. A. Lusi* 202 F.2d 223, 225 (5th Cir. 1953).

[21] *Graham v. A. Lusi* at 225.

Plaintiff who is contributory negligent.[22]   The Fifth Circuit found both the Plaintiff and the defendant negligent and held the trial court erred in not providing the state contributory negligence bar instruction to the jury.[23]

An oft-cited District Court case arising within the Fifth Circuit found likewise. In *Byrd v. Napoleon Avenue Ferry Co.*, the U.S. District Court adjudicated the death of a non-seaman who died when his car fell from a ferry in the Mississippi River. The District Court held that "the right to recover under a state wrongful death statute for a maritime tort is governed by the law of the state."[24]   Despite the fact that the ferry was negligent, the District Court found that the accident would not have happened had it not have been for the negligence of the decedent approaching the end of the ferry at an excessive speed.   Applying the Louisiana law, the court concluded, "He was guilty of contributory negligence and that contributory negligence bars any recovery for his death."[25]

In the case at bar, the same result should obtain.   Applicable Supreme and Circuit Court precedent requires this Court to make Plaintiffs' Texas Wrongful Death and Survival Act claims subject to all defenses available under the jurisprudence of

---

[22] *Mooney v. Carter* at 148.

[23] *Id* at 149.

[24] *Byrd v. Napoleon Ave Ferry Co.,* 125 F. Supp. 573, 578 (E.D. La. 1954).

[25] *Id*

the State of Texas whose statute governs the right of action asserted by Plaintiffs.  In this case, that would include the Texas 51% bar to recovery rule of Chapter 33.

## G.      The Supreme Court of Texas is in accord.

In *State Dept. of Highways v. Dopyera*, 834 S.W.2d 50 (Tex. 1992) (cert. denied 113 S. Ct. 636 (1992)), the Supreme Court of Texas reviewed a case involving a maritime tort in state court – a yacht which hit and damaged a state bridge.[26]  In an opinion by Justice Gammage, the court succinctly framed the issue similar to the one confronting this Court in a case at bar:

> The issue in this case is whether the federal maritime law pre-empts state sovereign immunity law to require application of maritime's pure comparative negligence principles to an accident at a state-operated drawbridge.

In *Dopyera, s*uit was brought under the Texas Tort Claims Act.  In the instant case suit has been brought under the Texas Wrongful Death and Survival Acts. Nevertheless, as will be seen, with regard to claims brought under either act, the Texas rule of comparative responsibility set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 33.001(a) is to govern the negligence of the parties.

The yacht owner sued the state and was found 60% contributorily negligent by the trial court.  Initially, the Texas Court of Appeals held that the general maritime law pure comparative fault scheme governed the negligence of the parties to the

---

[26] It is well-settled that maritime torts can be also adjudicated by state courts.

exclusion of the Texas Proportionate Responsibility Act and awarded the Plaintiff 40% of the property damage to his yacht.  Highlighting the importance of state sovereignty, the Supreme Court of Texas reversed noting:

> The Court of Appeals erred by failing to give proper weight to the State's interest in its own sovereign immunity by concluding that federal law preempted the State's limitations on its consent to be sued. Congress has expressed no clear intent to abrogate state sovereign immunity and impose general maritime law on the states for property damage.  Moreover, the State's limited waiver of immunity under its Tort Claims Act permits imposition of only the state remedy, **and does not allow the broader federal maritime remedy at pure comparative fault**.

*Dopyera*, 834 S.W.2d at 52 (emphasis added).

Looking to see if Congress had indicted federal law was to pre-empt state in this area, the Texas high court found "no statute with a clear expression of congressional intent to abrogate sovereign immunity" and refused to imply one. Likewise, in a case at bar, Congress has enacted no statute providing a remedy for the wrongful death of a nonseaman or maritime worker in state waters.  Therefore, state wrongful death and survival acts along with state substantive laws apply.

The Supreme Court of Texas summed up its holding:

> The State is free to limit damages and liability to the terms of its waiver of sovereign immunity, even if the general maritime law conflicts with the liability limitations of the Tort Claims Act.  In a cause of action against the State of Texas for property damage resulting from the operation of motor-driven equipment owned and operated by the State, the relief of available is limited to that provided by Texas law, **and in accordance with Texas' system for apportionment of fault**.

*Dopyera*, 834 S.W.2d 54 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 33.001).

Applying the Texas Proportionate Responsibility Act, the Texas high court held that in light of his 60% negligence, Dopyera would take nothing. *Id*.

In the case of bar, Plaintiff's asserts no claim based upon a federal statute. Rather, his claim is clearly and succinctly based on two Texas statutes – the Texas Wrongful Death and Survival Acts. Similarly, the relief available under those two acts is that provided by Texas law and Plaintiffs' negligence herein is subject to review under the Texas Proportionate Responsibility Act of Texas.

*Both the Supreme Courts of the United States and of Texas have stressed that state sovereignty call for the use of state substantive law, such as the state rules of comparative responsibility.*

## H.    Other jurisdictions.

Similar to the Supreme Court of Texas, in a case brought under the state wrongful death and survival acts brought for a death in an airboat collision within Florida waters, the Florida Supreme Court held that the Florida defense of a contributory negligence bar, rather than the partial admiralty defense of comparative fault, was applicable in an action for wrongful death brought under the Florida wrongful death statute where the maritime tort was committed on navigable waters within the state.[27]

---

[27] *Bilbrey v. Weed,* 215 So. 2d 573, 480 (Fla. 1968)

In *Cromartie v. Stone*, the North Carolina Supreme Court reviewed a wrongful death suit involving a maritime tort brought under the North Carolina Wrongful Death Act.  The North Carolina Supreme Court considered the question of whether the wrongful death action was to be tried under admiralty law, or as the laws of the courts of the state. As did the Texas and Florida Supreme Courts, the court found state law was properly applied:  "We think the action was tried correctly under the principles of common law, **on the issues of negligence, contributory negligence, and damages the proper ones**."[28]

The *H.S., Inc. No. 72* involved a boy killed while swimming on the Passaic River in New Jersey.  Suit was brought under the New Jersey Wrongful Death Act.[29] The Third Circuit held it well-settled that where death due to maritime tort occurs on state waters in a state with a wrongful death act, a federal court sitting in admiralty will entertain the suit.[30]   The court held: "He who seeks to recover in admiralty under a State death statute for a maritime tort may do so only in accordance with the laws of the State in which the tort occurred.  The law of New Jersey therefore governs the substantive rights of the parties."[31]

---

[28] *Cromartie v. Stone,* 140 S.E. 612, 615 (N.C. 1927)(emphasis added).

[29] *The H.S. Inc. No., 72*, 130 F.2d 341, 342-43 (3rd Cir. 1942).

[30] *Id.*

[31] *Id* at 343.

In *Hill v. Waterman S.S. Corp.*, 251 F.2d 655 (3rd Cir. 1958), the Third Circuit addressed the death of a non-seaman in state waters.  The Circuit Court held that a suit brought under the Pennsylvania Wrongful Death Act called for application the Pennsylvania contributory negligence bar rule, and not the admiralty pure comparative negligence scheme. *Hill* at 655.

*Feige v. Hurley*, 89 F.2d 575 (6th Cir. 1937) involved a death in state waters resulting from the collision of two recreational boats.  The Sixth Circuit held that the federal court sitting in admiralty could entertain suits under the Kentucky Wrongful Death Act, but must adjudicate it under Kentucky substantive law.  This included the Kentucky contributory negligence bar to recovery.  As Plaintiff was contributory negligent, the Sixth Circuit held there would be no recovery.  *Feige v. Hurley* at 578.

*Monongahela River Consol. v. Schinnerer*, 196 F. 375 (6th Cir. 1912) involved a collision between a tow and a small motorboat resulting in the plaintiff's death.  The Sixth Circuit held the cause of action under the state wrongful death act could be enforced in federal court.  Under the Arkansas Wrongful Death Act, contributory negligence rules of Arkansas applied and the pure comparative fault rule of the general maritime law was not applicable.  The court ruled the state wrongful death action must be adjudicated under the state contributory negligence

rules, which in Arkansas held contributory negligence to be a complete bar to recovery. *Monongahela* at 378.

In *Continental Cas. Co. v. The Benny Skou*, 200 F.2d 246 (4th Cir. 1952), the Circuit Court was confronted with a death in Virginia state waters and a suit brought under the Virginia Wrongful Death Act. The Virginia Wrongful Death Act has a one-year statute of limitations which the court noted was substantive. The Plaintiff argued that the more liberal admiralty doctrine of laches should apply. The Fourth Circuit held that if you ground your suit in the Virginia Wrongful Death Act, you accept all of the Virginia law *cum onere* (including the Virginia Statute of Limitations).

## I.     "Maritime but local:" Goal of uniformity under general maritime law is not offended.

Federal courts have often held that uniformity in the maritime industry to be an important consideration when applying federal versus state law. *See Yamaha*, 516 U.S. 199. However, in the case at bar as in *Yamaha*, the uniformity principle does not override state sovereignty. Plaintiffs are all Texas citizens, their recreational boat was registered with the State of Texas,[32] repaired in Texas[33] and the incident happened entirely within State waters. When registered with the State, is was given "TX Number 6214CZ" and its area of operation was designated:

---

[32] See Exh. 1 – State of Texas boat registration documentation

[33] See Exh. 2 – Texas repair records

"Principal Operation: TX."[34]  Plaintiffs seek damages solely under Texas law, for the death of a local recreational boater, a non-seaman.[35]

Indeed, the Federal government through the United States Coast Guard (the federal entity in charge of maritime safety and transportation in the U.S.) declined to conduct an investigation into the tragic incident noting: "As this incident only involved a pleasure craft in State waters: this office did not do an investigation."[36] As described herein, Congress and the Federal Courts have prescribed various remedies for seamen regardless of where they may be injured.  This is because seamen may be in one state on one day, another state on the next, and a foreign country after that.  Uniformity is important in providing them a consistent and predictable remedial scheme.  In the case of the Reeds – they lived in Texas, worked in Texas, and used their recreational boat in Texas.  They filed suit in Texas.  This is a local matter not concerning maritime commerce or offending the uniformity of the federal maritime law.

In short, this matter is "maritime but local."  Plaintiffs plead Texas law; Texas law should govern *cum onere*. The essence of the maritime but local doctrine is the competing interests of the State and Federal governments over things maritime.  In *Western Fuel Co. v. Garcia*, 257 U.S. 233 (1921) the Court was faced with a suit

---

[34] See Exh. 1 – supra.

[35] See Notes 1-5, supra.

[36] U.S. Coast Guard FOIA Response of 18 July 2019, Exh. 3.

under the California Workers' Compensation Act for the death of a longshoreman in

state waters. *Western* at 239. The issue was whether the suit would be governed by

the statute of limitations of the general maritime law or that of the State of California.

Under the State law, the case would be time-barred. The Court found the matter to

be maritime and local and applied the State statute, noting:

> [W]here death upon [State] waters follows from a maritime tort
> committed on navigable waters within a state whose statutes give a
> right of action on account of death by wrongful act, the    admiralty
> courts will entertain a libel in personam for the damages sustained by
> those to whom such right is given. The subject  is maritime and local
> in character and the specified modification of or supplement to the rule
> applied in admiralty courts when following the common law, will not
> work material prejudice to the characteristic feature of the general
> maritime law, nor interfere with the proper harmony and uniformity of
> that law in its international and interstate relations.

*Western Fuel Co*. at 242 (citing *Southern Pacific v. Jensen*, 244 U.S. 205 (1918)).

Where nonseafarers are involved, the likelihood that maritime commerce interests

would be paramount is remote, and when these nonseafarers are injured in state

territorial waters, maritime commerce concerns are even less affected and state

interests easily outweigh the need for national uniformity.

Commentators are in according with this important aspect of State

sovereignty:

> Except for deaths on the high seas, Congress has not enacted legislation
> with respect to nonseafarers killed in state waters. This inaction may
> have been interpreted by the *Calhoun* Court as a decision by Congress
> that uniformity is unnecessary, and that there is no need for federal law
> to displace state law. Even without drawing such an inference from

congressional inaction, the Supreme Court in *Calhoun* may simply have concluded that there is no compelling need for uniform rules to control the remedies available to beneficiaries of nonseamen killed in state waters. **The interest of states is strong with respect to persons killed in state waters and this state interest is not offset by comparable federal interests where decedent is a nonseafarer.** Seafarers by definition are persons whose activities may involve or affect interstate and foreign commerce. There is a much stronger national interest in promoting uniformity where interstate and foreign commerce may be involved or affected compared to the recreational activities in which most nonseafarers are usually involved.

Robert Force, *Post-Calhoun Remedies for Death and Injury in Maritime Cases: Uniformity, Whither Goest Thou?,* 21 Tul. Mar. L.J. 7, 38 (1996) (emphasis added).

This Court has agreed that using the Texas Wrongful Death and Survival Acts for this death of a non-seaman in State waters does not offend the uniformity of the general maritime law. *See Blome v. Aerospatiale Helicopter Corp., et. al.,* 924 F. Supp. 805 (S.D. Tex. [Galveston Division] 1996). *Blome* involved the death of a non-seaman in Texas waters. Plaintiffs sued under the Texas Wrongful Death and Survival Act seeking the additional categories of damages available under Texas law. In upholding the use of the state wrongful death and survival statutes, this Court concluded uniformity was not offended noting: "[a]ny benefit that may result from achieving uniformity among laws designed to address completely different problems or to benefit completely different classes of persons may well be outweighed by the damage caused by the loss of rights or remedies sacrificed at the altar of uniformity." *Blome* at 814-15.

## IV.

## <u>CONCLUSION</u>

In the case of bar, the Plaintiffs have clearly grounded their wrongful death and survival claims in Texas law.   They must accept Texas law *cum onere*. Applicable Supreme and Circuit Court precedent requires this Court to make Plaintiffs' Texas Wrongful Death and Survival Act claims subject to all defenses available under the jurisprudence of the State of Texas whose statute governs the right of action they have asserted.   Maersk respectfully moves for application of the Texas 51% bar to recovery rule of Chapter 33.

Respectfully submitted,

**HOLMAN  FENWICK  WILLAN  USA LLP**

***/s/ James T. Brown***

**James T. Brown**
Texas Bar No. 03138150
Federal ID. No. 11656
5151 San Felipe, Suite 400
Houston, TX 77056
Phone: (713) 917-0888
Fax:   (713) 953-9470
jim.brown@hfw.com
**ATTORNEY-IN-CHARGE FOR DEFENDANT MAERSK LINE, LIMITED**

30

**OF COUNSEL:**

**HOLMAN FENWICK WILLAN USA LLP**

Thomas N. Lightsey III

Texas Bar No. 12344010

Federal ID No. 84829

tom.lightsey@hfw.com

Christopher R. Hart

Texas Bar No. 09136310

Federal ID No. 12517

chris.hart@hfw.com

Alejandro Mendez-Roman

Texas Bar No. 24102778

Federal ID No. 2295449

alex.mendez@hfw.com

## CERTIFICATE OF CONFENECE

I hereby certify that I conferred with Plaintiffs' counsel Mr. Paxton Crew regarding the substance of the foregoing Motion and counsel indicated Plaintiffs are opposed.

/s/ Thomas N. Lightsey III

Thomas N. Lightsey III

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this 23rd day of November 2020 to all counsel of record via this Court's Electronic Document Filing System:

/s/James T. Brown

James T. Brown

31