IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JANA REED, et al | § | |
| | § | |
| *Plaintiffs* | § | C.A. NO. 3:19-cv-00238 |
| | § | |
| V. | § | 9(H) Admiralty |
| | § | |
| MAERSK LINE-LTD, et al | § | |
| | § | |
| *Defendants.* | § | |

### PLAINTIFFS' RESPONSE TO MAERSK'S MOTION TO APPLY CHAPTER 33 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

TO THE HONORABLE JUDGE OF SAID COURT**:**

Maersk invites the Court to upend decades of established maritime law and apply Texas's comparative fault scheme in this admiralty case instead of maritime law's pure comparative fault principles. This issue was decided over 60 years ago by the United States Supreme Court. *See Pope & Talbot v. Hawn*, 346 U.S. 406, 409-10 (1953) (rejecting application of Pennsylvania comparative fault law that bars contributorily negligent plaintiff from recovering).

And, since then, the supremacy of maritime law's comparative fault scheme over state laws has been reaffirmed time and again by the Fifth Circuit and other federal courts alike. *See Coats v. Penrod Drilling Corp.*, 61 F.3d 1113 (5th Cir. 1995) (en banc) (maritime law's joint and several liability scheme applies in force over others); *Lewis v. Timco, Inc.*, 716 F.2d 1425 (1983) (en banc) (maritime comparative fault principles, in lieu of strict liability, applies to maritime product liability cases); *Calhoun v. Yamaha Motor Corp.*, 216

F.3d 338, 351 (3d Cir. 2000) *cert. denied* 531 U.S. 1037 ("*Yamaha II*") ("[W]e hold that federal maritime standards govern the adjudication of defendant's […] putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute."); *In re Antill Pipeline Const. Co.*, 866 F. Supp.2d 563, 569-70 (E.D. La. 2011) (rejecting application of Louisiana statute that would have barred Plaintiff's recovery if found over 25% at fault, holding that "[t]o apply the state statute would impermissibly interfere with maritime law's uniformity in its settled fault allocation scheme in wrongful death cases…").

The Court should reject Maersk's invitation to radically depart from these well-established authorities. Maersk's Motion should be denied.

**Maritime law controls.**

There is no dispute that Plaintiffs have properly invoked this Court's admiralty jurisdiction and this claim was brought on the "admiralty side" of the docket, designated under Rule 9(h). *Pope & Talbot*, 346 U.S. at 411. Maersk does not dispute this Court's admiralty jurisdiction, nor could it have given that Chris Reed's death was caused by an interstate container ship and occurred on the navigable waters of the United States. *See* Maersk's Motion [Doc. 78] at pg. 6; *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). Thus, federal maritime law applies to this proceeding. Maritime law preempts state law if the state law would interfere with harmony and uniformity of the general maritime law. *See So. Pac. Co. v. Jensen*, 244 U.S. 205, 216-17 (1917); *Antill*, 866 F. Supp. 2d at 569. Stated differently, an admiralty court may apply state law as long as it does not conflict with the general maritime law. *See id.*

**Texas's 51% bar rule conflicts with maritime law's pure comparative fault scheme, so the Court must apply maritime law.**

Sixty-seven years ago the Supreme Court was faced with a similar argument that Maersk makes today. Specifically, the vessel owner in *Pope & Talbot* argued, among other things that "Pennsylvania law controls this case and under that state's law any contributory negligence of an injured person is an insuperable bar to his recovery." 346 U.S. at 408. The Supreme Court soundly rejected the application of Pennsylvania's comparative fault rule:

> "The harsh rule of the common law under which contributory negligence wholly barred an injured person from recovery is completely incompatible with modern admiralty practice. Exercising its traditional discretion, admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires." *Id.* at 409.

Maersk would argue that the plaintiff in *Pope & Talbot* (Charles Hawn) was a maritime worker and not seeking to enforce state created wrongful death statutes. Again, this difference is inconsequential, as addressed by the Supreme Court in *Pope & Talbot*:

> "Even if Hawn were seeking to enforce a state-created remedy for this right, federal maritime law would be controlling. While states may sometimes supplement federal maritime policies, ***a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court***. These principles have been frequently declared and we adhere to them." *Id.* at 409-10. (emphasis added)

Texas courts also follow this principle announced in *Pope & Talbot*. *See Anderson v. Varco Int'l, Inc.*, 905 S.W.2d 26, 28 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("Federal maritime law controls actions involving maritime torts even when trying to enforce a state created remedy.").

Tellingly, Maersk does not even cite (much less discuss) *Pope & Talbot* in its 30-page brief to the Court. Instead it asks the Court to follow three Fifth Circuit cases—all decided before *Pope & Talbot*. *See* Maersk's Motion at pgs. 17-21. The Supreme Court released its opinion in *Pope & Talbot* in December of 1953, while the cases cited by Maersk were decided in 1905, 1925, and June of 1953 respectively.[1] The Court should reject these ancient Fifth Circuit cases as incompatible with *Pope & Talbot* and its progeny.

Maersk spends a considerable amount of its Motion discussing the Third Circuit's "scholarly opinion" in *Calhoun v. Yamaha*, 40 F.3d 622 (3d Cir. 1994) and the Supreme Court's affirming opinion of *Yamaha Motor Corp v. Calhoun*, 516 U.S. 199 (1996). But the case did not end there. Maersk left out the Third Circuit's subsequent opinion after remand that answers the precise question presented in this case. *See Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338 (2000) ("*Yamaha II*").[2]

In *Yamaha II*, the Third Circuit succinctly stated the issues left unresolved by the prior opinions, the second of which is pertinent here:

> "Neither the original panel of this Court nor the Supreme Court, however, answered the questions that emerged from their respective holdings. [cites omitted] *First*, if the Calhoun's could utilize Pennsylvania's wrongful death or survival statute to obtain relief for Natalie's death which law—Pennsylvania's or Puerto Rico's—governs the form of remedy (or remedies) available to the Calhouns? *Second*, even understanding that Pennsylvania's wrongful death or survival statute provides the vehicle through which this action may proceed, ***does federal maritime law or state law provide the standards by which Yamaha's substantive liability will be determined?***" *Id.* at 341-42. (emphasis added).

---

[1] The cases are *Quinette v. Bisso*, 136 F. 825, 838 (5th Cir. 1905); *Truelson v. Whitney*, 10 F.2d 412 (5th Cir. 1925); *Graham v. A. Lusi*, 206 F.2d 223 (5th Cir. 1953).
[2] Again, *Yamaha II* is a case neither cited nor discussed in Maersk's 30-page Motion.

The Third Circuit answered these by holding that (1) "state law may provide a ***procedure or a vehicle*** through which a plaintiff may institute an action to remedy death in territorial waters."; and (2) "that ***federal maritime standards govern*** the adjudication of a defendant's (here, Yamaha's) putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute." *Id.* at 350-51 (emphasis added). This conclusion is in accord with the Supreme Court's announcement in *Calhoun* that "the **damages available** for the jet ski death of Natalie Calhoun are properly governed by state law." 516 U.S. 216. (emphasis added). Texas's 51% bar rule goes to Maersk's ***liability***, not damages.

This is precisely the scenario presented to the Court in this case: the Reed family is using the Texas wrongful death and survival statutes as a ***vehicle*** to maintain their suit to remedy Chris's death, but maritime law (and its comparative fault rules) govern Maersk's liability.

Judge Berrigan of the Eastern District of Louisiana was presented with a similar motion to Maersk's, determining whether to apply a state comparative fault statute to a maritime tort. *In re Antill Pipeline Const. Co.*, 866 F. Supp. 2d 563 (2011). The defendant vessel owner in *Antill* asked the court to apply La. Rev. Stat. § 9:2798.4, which bars the operator of a watercraft (or her estate) from recovering damages if (1) the operator's blood alcohol concentration is 0.08% or higher, and (2) the operator is found to be 25% or more contributorily negligent. *Id.* at 565. After discussing *Yamaha II, Calhoun,* and *Moragne* (among other relevant authorities), Judge Berrigan concluded that applying the state statute would be inconsistent with maritime law:

> "To apply the state statute would impermissibly interfere with maritime law's uniformity in its settled fault allocation scheme in wrongful death cases, and is not the sort of statute which was contemplated by the *Yamaha* court when it preserved the application of state *remedial* statutes to deaths of nonseafarers within territorial waters." *Id.* at 569-70. (emphasis by court).

Maersk asks for the same type of application rejected by Judge Berrigan. The Court should reject Maersk's request to apply Texas's Chapter 33 "[b]ecause the effect of the state statute's application could be to totally shield one party from all liability to another party [… and] the doctrine of pure comparative fault would be frustrated and materially prejudiced." *Id.* at 569.

If the Court were to find Reed 51% or more responsible, it would shield Maersk from all responsibility for its negligence. That result is incompatible with general maritime law's pure comparative fault scheme and the antithesis of the beneficial purposes of admiralty proceedings. The Supreme Court correctly pointed out that "*Moragne*, in sum, centered on the *extension* of relief, not on the *contraction* of remedies." *Calhoun*, 516 U.S. at 213 (emphasis added). The Supreme Court approvingly quoted Judge Becker's comments in *Yamaha I:*

> "The 'humane and liberal' purpose underlying the general maritime law remedy of *Moragne* was driven by the idea that survivors of seamen killed in state territorial waters should not have been barred from recovery simply because the tort system of the particular state in which a seaman died did not incorporate special maritime doctrines." *Id.* at 214.

**Adopting Maersk's argument would destroy maritime uniformity.**

The Supreme Court has repeatedly stressed the importance of uniformity of maritime law throughout these United States. After all, that was the underlying purpose

for the Constitution's grant of this Court's admiralty jurisdiction which has been properly invoked by the Reed family. *See, e.g.*, *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28 (2004) ("We have explained that Article III's grant of admiralty jurisdiction must have referred to a system of law coextensive with, and operating in uniformly in, the whole country.").

Here, application of Texas's 51% bar rule (TEX. CIV. PRAC. & REM. CODE § 33.001) would break maritime law's uniform comparative fault scheme and subject admiralty cases to different rules depending on the state of occurrence. For example, adoption of Maersk's rule would subject its vessel, the *Maersk Idaho*, to different comparative fault rules depending on which state it caused harm. Below is a list of how three states would treat the issue of comparative fault under Maersk's proposal if the *Maersk Idaho* injured or killed someone in that state's territorial waters:

1. **North Carolina-** the plaintiff would be barred from recovering if found contributorily negligent at all, even 1%. *See Small v. WellDyne, Inc.*, 927 F.3d 169, 173 (4th Cir. 2019) ("Under North Carolina law, if an issue of contributory negligence is raised as an affirmative defense, and proved, it **completely bars plaintiff's recovery** for injuries resulting from defendant's negligence.") (internal quotations and citations omitted; emphasis added).

2. **Florida** – the plaintiff's damages would be reduced by her own contributory negligence, up to 99%. This is a pure comparative fault scheme like the general maritime law. *See Sowers v. R. J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1135 (11th Cir. 2020) ("Florida is a pure comparative fault jurisdiction.").

3. **Texas** – the plaintiff would be barred from recovery if found 51% contributorily negligent or greater. TEX. CIV. PRAC. & REM. CODE § 33.001.

Applying three different systems of comparative fault depending on which state the vessel happens to commit a tort is entirely inconsistent with federal maritime law. The

*Maersk Idaho*, and many other vessels, likely call on ports in all three of the above states. These vessels and the people who are hurt or killed by the vessel's negligence should not be subject to different comparative fault standards.

Moreover, a short hypothetical will demonstrate the necessity for a uniform rule. Take a hypothetical collision between two vessels on the Sabine River comprising the border between Texas and Louisiana. The collision occurred directly in the middle of the river. Will Texas's 51% bar rule apply? Or Louisiana's pure comparative fault rule?[3] The choice of law analysis should not be difficult, but uniform across all admiralty cases in the United States.

The Fifth Circuit court of appeals stressed this maritime uniformity point when it rejected a strict liability fault scheme for product liability defendants under maritime law:

> "In sum, ***comparative fault has long been the accepted risk-allocating principle under the maritime law, a conceptual body whose cardinal mark is uniformity***. These values of uniformity, with their companion quality of predictability, a prized value in the extensive underwriting of marine risks, are best preserved by declining to recognize a new and distinct doctrine without assuring the completeness of its fit. We are persuaded that the fit within the general maritime principles of a doctrine of strict liability for defective products without comparative fault would be uneven at best." *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1428 (5th Cir. 1983) (en banc) (emphasis added).

Further, another *en banc* Fifth Circuit reaffirmed the general maritime law principles of comparative fault in *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113 (1995) (en banc). The defendant in *Coats* called upon the Fifth Circuit to change the general maritime law rules of joint and several liability—that an injured plaintiff may recover the whole of

---

[3] *See* La. Stat. Ann.-C.C. Art. 2323.

-8-

the judgment from any defendant, regardless of their percentage of fault. *See id.* After considering multiple approaches to joint and several liability (including the rule in TEX. CIV. PRAC. & REM. CODE § 33.013) the Fifth Circuit maintained the general maritime law rule. *Id.* at 1133, 1139. Among other reasons, the Fifth Circuit rejected alternate joint and several liability proposals because it "would create a lack of uniformity among the legislative and judicial schemes in an area where uniformity currently exists." *Id.* at 1135.

In sum, adopting Maersk's argument would destroy uniformity and subject vessels and claimants to differing standards of liability according to various state laws and statutes. Because application of Texas's 51% bar rule interferes with the proper harmony and uniformity of the general maritime law, the Court must reject it. *See Jensen*, 244 U.S. 216-17; *Antill*, 866 F. Supp. 2d at 569-70. The Court should deny Maersk's motion.

### *The Tungus, Hess, Moragne & Calhoun*—**the bottom line.**

Maersk also spends a considerable amount of time discussing *The Tungus v. Skovgaard*, 358 U.S. 588 (1959) and *Hess v. United States*, 361 U.S. 314 (1960). Both cases were decided before the Supreme Court's seminal opinion in *Moragne v. State Marine Lines, Inc.*, 398 U.S. 375 (1970). The conundrum faced by the Supreme Court in *The Tungus* and *Hess* was that maritime law did not recognize a cause of action for wrongful death. Thus, the only available remedy for family members of persons killed in territorial waters was through state wrongful death statutes.[4]

---

[4] Unless the decedent was covered under either the Jones Act or LHWCA which authorizes wrongful death claims.

This situation created an anomaly. If a vessel seriously injured someone in state waters but they survived, the vessel would be subject to maritime law. But if the same tort resulted in someone's death, the claim would be subject exclusively to state law. In other words, the vessel's conduct would be adjudged under different law depending on whether the claimant was merely injured or if she was killed. *See Calhoun*, 516 U.S. at 211; *Moragne*, 398 U.S. at 395.

*Moragne* and *Calhoun* changed that. *Moragne* expressly overruled *The Harrisburg* (398 U.S. at 408-09) and implicitly overruled *The Tungus* for the proposition cited by Maersk herein. *See Yamaha II*, 216 F.3d at 350 ("The more specific ruling of *The Tungus*, however—that federal courts must apply all facets of state law when a plaintiff seeks to proceed by way of a cause of action grounded in state law—was effectively overruled in *Moragne* once the Court invalidated the reasoning advanced by the Court in *The Harrisburg*."). "*Moragne*, in sum, centered on the ***extension*** of relief, not on the contraction of remedies." *Calhoun*, 516 U.S. at 213 (emphasis added).

The lesson of these cases is that Maersk's ***liability*** should be adjudged under maritime law while the "***damages available*** for the death of [Chris Reed] are properly governed by state law." *Id.* at 216 (emphasis added); *see also Yamaha II*, 216 F.3d 351. Texas's 51% bar rule could completely shield Maersk from liability and grossly offends traditional principles of maritime law—namely its uniform comparative fault scheme—and therefore must be rejected. *See Pope & Talbot*, 346 U.S. at 409-10; *Antill*, 866 F. Supp. 2d at 569-70. Even the Supreme Court in *Hess* envisioned that there would be circumstances where state law "might contain provisions so offensive to traditional

principles of maritime law that the admiralty would decline to enforce them." 361 U.S. at 320. Maersk's Motion presents such a circumstance and it should be denied.

**Maersk is not a sovereign state or king.**

Maersk cites the Texas Tort Claims Act case of *State Dept. of Highways v. Dopyera*, 834 S.W.2d 50 (Tex. 1992) to supports its request to apply Texas comparative fault law. Of course, that case involved the sovereign immunity of the State of Texas. While we rejected the notion that "the King can do no wrong" in 1776 or so, our laws still provide limited recourse against the sovereign. 173 years ago, the Texas Supreme Court held that "no State can be sued in her own courts without her consent, and then ***only in the manner indicated by that consent***." *Hosner v. De Young*, 1 Tex. 764, 769 (1847) (emphasis added).

150 years or so later, *Dopyera* reaffirmed that principle and held that the State of Texas can dictate the manner in which it can be sued and set rules of liability and damages according to its laws only, not the general maritime law. *See Dopyera*, 834 S.W.2d at 54. ("The State is free to limit damages and liabilities to the terms of its waiver of sovereign immunity."); *see also Welch v. State Dept. of Highways. & Pub. Transp.*, 780 F.2d 1268, 1274 (5th Cir. 1986) (en banc) (State of Texas not subject to suits under Jones Act because of sovereign immunity); *Lyons v. Tex. A&M Univ.*, 545 S.W.2d 56, 58 (Tex. App.—Houston [14th Dist.] 1976, writ refused n.r.e.) ("The State is clearly immune from suits in personam brought under the general maritime law without its consent.").

While Maersk may be one of the largest shipping companies in the world, it is not a sovereign state. It does not have the luxury to dictate the terms and manner in which can be sued. It is subject to the same laws and rules of other vessel operators, including the

-11-

general maritime law of the United States. *Dopyera* is not applicable to this case and, nonetheless, not binding on this Court.

## Conclusion and Prayer

For the reasons stated above, Maersk's Motion should be denied.

Respectfully submitted,

*/s/ Paxton N. Crew*
Paxton N. Crew
ATTORNEY-IN-CHARGE FOR PLAINTIFFS
SDTX 859147
TBA No. 24058720
303 E. Main, Suite 260
League City, Texas 77573
Paxton@thecrewlawfirm.com
Telephone: (713) 955-0909
Facsimile:  (409) 908-4050

And

*/s/ John W. Stevenson, Jr.*
JOHN W. STEVENSON, JR.
SDTX: 3992
State Bar No. 19196050
Stevenson & Murray
24 Greenway Plaza, Suite 750
Houston, Texas 77046
jstevenson@stevensonmurray.com
Telephone:  (713) 622-3223
Facsimile:  (713) 622-3224

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this 14th day of December 2020 to all counsel of record via this Court's Electronic Document Filing System:

>*/s/ John W. Stevenson, Jr.*
>JOHN W. STEVENSON, JR.