THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JANA REED, INDIVIDUALLY § | | |
| AND AS REPRESENTATIVE OF § | | |
| THE ESTATE OF CHRISTOPHER REED § | | |
| AND ON BEHALF OF A.R. (A MINOR); § | | |
| LOGAN REED, AND CHASE REED § | | |
|    *Plaintiffs* § | | C.A. NO. 3:19-cv-00238 |
| § | | |
| V. § | | 9(H) Admiralty |
| § | | |
| MAERSK LINE-LTD, USA AND § | | |
| MAERSK LINE, LIMITED § | | |
|    *In Personam Defendants;* § | | |
| M/V MAERSK IDAHO § | | |
|    *In Rem defendant.* § | | |

**REPLY BRIEF OF MAERSK LINE, LIMITED IN SUPPORT OF MOTION FOR APPLICATION OF TEXAS CIVIL PRATICE AND REMEDIES CODE CHAPER 33**

TO THE HON. ANDREW M. EDISON:

In support of its Motion for Application of Chapter 33, Defendant respectfully asserts as follows:

1. ***Plaintiffs' cases become stranded on the shoals of traditional maritime commerce, maritime workers, and Congressional mandates***

This case involves a non-maritime worker using a recreational boat registered in Texas in state waters with no connection to any commercial maritime activity. It

occurred in a portion of Galveston Bay where commercial ships do not navigate (and cannot navigate due to the shallow water). It is strictly a state situation and the state sovereignty of Texas must be respected.

***Pope & Talbot v. Hawn*, 346 U.S. 406 (1953):** Not only does this case precede *The Tungus* and *Hess* by 6 years, it involved a maritime worker killed on a deep draft commercial ship. Mr. Hawn was a doing ship repair work on a vessel to enable it to complete loading its cargo safety and continue its commercial voyage. *Pope & Talbot* at 407. The Court found his rights were to be determined under the general maritime law because he was a ship repairer on a ship in navigable waters working to enable it to carry its cargo, a traditional maritime activity. *Id.* at 409. **Hawn's Complaint asserted no state actions**. He sued for unseaworthiness and negligence under the general maritime law. *Id.* Further, as a professional ship repairer Hawn was entitled to and received federal workers' compensation benefits under the Longshore & Harborworkers' Compensation Act. *Id.* at 411. **Here, Plaintiffs seek damages solely under the Texas Wrongful Death and Survival Acts for the death of a local recreational boater. All the Plaintiffs are Texas citizens, the boat was purchased, repaired, and registered in Texas with the area of operation designated as: "Principal Operation: TX."[1]**

---

[1] Defendants Motion for Application [Dkt. 78] at p. 2-3, 26-27.

**Coats v. Penrod Drilling Corp., 61 F. 3d 1113 (5th Cir. 1995):** Plaintiff was again a commercial maritime worker aboard a commercial vessel, the jack-up Rig 69. *Coats* at 1117. No state claim was asserted by Mr. Coats. He claimed negligence against Penrod, unseaworthiness against co-defendant MIS and "entitlement to maintenance and cure from MIS under the Jones Act." The court considered him a Jones Act seaman. *Id*. at 1136. He later amended and added a claim for compensatory and punitive damages for wrongful termination of maintenance and cure. *Id.* The Circuit Court found the case involved "injury to a worker while repairing and maintaining a jack-up rig in navigable waters, **without a doubt**, workers' injuries, particularly to those involved in repair and maintenance, can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel." *Coats* at 1119 (emphasis added). Understandably, the 5th Circuit concluded: "[c]onsidering these factors … we agree with the district court's decision to apply general maritime law." *Id*. at 1121. **In contrast to Mr. Coasts, Plaintiffs herein have filed claims solely under Texas law. There is no maritime worker asserting a claim under the general maritime law or Jones Act. Here we have a Texas police chief out for a day of recreational boating with his wife in Texas waters with no disruptive impact on commercial maritime commerce.**

3

*Anderson v. Varco Int'l Inc.*, 905 S.W. 2d 26 (Tex. App. – Houston [1st Dist.] 1995): this matter, too, involved a maritime worker injured aboard a commercial vessel. He filed claims in state court which he described as "general maritime torts." *Anderson* at 29. The defendant urged application of the Texas two-year statute of limitations (which would have precluded the action) with the Plaintiff pushing for the 3-year maritime personal injury statute of limitations. In its "Analysis" section, the court noted it was following the First Circuit's *Butler v. American Trawler Co.*[2] decision in adopting the federal three-year statute. The court of appeals noted that it didn't matter whether one considered the statute of limitations rule substantive or procedural. In this case, Congress had occupied this area since 1987 when it enacted 46 U.S.C.A. § 763a mandating a three year statute of limitations for "personal injury or death or both arising out of a maritime tort." *Anderson* at 29. Congress had already determined the issue and the court "sailed in occupied waters." **Not only did Anderson involve a professional mariner asserting claims under the general maritime law, Congress had already stepped in and determined the applicable statute of limitations. Congress has taken no such action with regard to the defense of contributory negligence at issue in the instant case.**

---

[2] *Butler v. American Trawler Co.*, 887 F.2d 20 (1st Cir. 1989).

4

***In re Antill Pipeline Constr. Co.*, 866 F. Supp. 2d 563 (E.D. La. 2011):** involved a *Moragne* wrongful death action brought under the general maritime law, which the parties agreed applied. *Antill* at 564, 566. There was no state wrongful death claim brought as has been brought by Plaintiffs herein. The defendant sought to apply a Louisiana law that prohibited recovery by a boat operator found to be under the influence of alcohol and more than 25% responsible. The district court held the application of such a state law "in **maritime wrongful death actions** is not supported by the holding of *Yamaha Motor Corp. v. Calhoun.*"³ The court commented that "the newly created *Moragne* action substituted state wrongful death statutes, placing the action within the area of admiralty jurisdiction." The district court found that *Yamaha II* suggests that the Louisiana state law at issue "should not be applied **in the context of a *Moragne* action** and must yield to federal maritime law's governance of liability." *Id.* at 567 (emphasis added).

**In the case at bar, we have no *Moragne* action under the general maritime law; Plaintiffs have asserted claims solely under the Texas Wrongful Death and Survival Acts. As instructed by *The Tungus* and *Hess,* Texas law should be applied *cum onere*. A plaintiff cannot pick and choose. There is no commercial maritime commerce, no maritime worker, no commercial vessel, and no reason**

---

³ *In re Antill*, 866 F. Supp. At 566 (citing *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199 (1996).

**to offend state sovereignty and deny Texas the right to have its laws govern this dispute.**

### 2. <u>*Blanket supremacy of the general maritime law does not exist – State sovereignty under the Constitution should not be so easily jettisoned or given short shrift*</u>

State sovereignty involves the right of a state to self-government. It affects the role of supreme authority or rule exercised by every state within the Union. States may generally legislate on all matters within their territorial jurisdiction. The Tenth Amendment provides that powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States.[4] State law has long been used by federal courts litigating maritime torts. The Supreme Court noted in *Tungus*: "[A]cceptance of respondent's argument would defeat the intent of Congress to preserve state sovereignty over deaths caused by maritime torts within the State's territorial waters." *The Tungus*, 358 U.S. at 593. The *Yamaha* court noted: "[T]he exercise of admiralty jurisdiction, however, … does not result in automatic displacement of state law." *Yamaha v. Calhoun*, 516 U.S. 199, 206. Recognizing Congress' specific preservation of state law for deaths in territorial waters as set forth in the Death on the High Seas Act, *Yamaha* noted: "Taking into account what Congress sought to achieve, **we preserve the application of state**

---

[4] David R. Lapp, *Admiralty and Federalism in the Wake of Yamaha Motor Corp. v. Calhoun,* 41 Wm. & Mary L. Rev. 6771, 16 (2000)

**statutes to deaths within territorial waters**." *Yamaha* at 216. Commentators are in accord: "The interest of states is strong with respect to persons killed in state waters and this state interest is not offset by comparable federal interests where decedent is a nonseafarer."[5]

As this Court cautioned years ago, any perceived benefit of uniformity of the maritime law "may well be outweighed by the damage caused by the loss of rights or remedies sacrificed at the altar of uniformity."[6] Sacrifice of the State's sovereignty would indeed be a serious loss.

This matter does not involve a maritime worker, commercial ship, or affect commercial maritime activity. As the evidence at trial will show, it involves a police chief who ran about Galveston Bay in his Texas-registered recreational boat at speeds sometimes exceeding 40 mph who came up from behind a ship and decided to enter and jump its wake intentionally without ever navigating in or using the commercial ship channel.

### 3. *Yamaha II* Misinterpreted by Plaintiffs

Plaintiffs misinterpret *Yamaha II*, which they erroneously assert answered "the precise question presented in this case." This is not correct – *Yamaha II* did not directly address apportionment of fault. Rather, *Yamaha II* held: (1) federal

---

[5] Robert Force, *Post-Calhoun Remedies for Death and Injury in Maritime Cases: Uniformity, Whither Goest Thou?*, 21 Tul. Mar. L.J. 7, 38 (1996).
[6] *Blome v. Aerospatiale Helicopter Corp.,* 924 F. Supp. 805, 814-15 (S. D. Tex. [Galveston Div.] 1996).

maritime law provided the standard for substantive liability in an admiralty action brought pursuant to a state wrongful death/survival statute, and (2) the laws of Pennsylvania and Puerto Rico governed the damages in that matter. *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338 (3rd Cir. 2000) ("*Yamaha II*"). The *Yamaha II* holding is completely consistent with the Supreme Court's holding in *Yamaha* which held "the damages available for the [death of a non-seaman in State waters] are properly governed by state law." *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 216 (1996).

Plaintiffs argue that "Texas's 51% bar rule goes to Maersk's liability, not damages." This is simply wrong. For the purpose of this motion, the putative liability of the parties is not an issue. Rather, the issue now before the Court is a damages question, which "are properly governed by state law." *Yamaha Motor Corp.,* 516 U.S. at 216. Plaintiffs attempt to rely on *In re Antill* for support that federal maritime law should control apportionment of fault, but that case expressly held that *Yamaha* is limited to standards of liability:

> The thrust of Yamaha is to argue that considerations of uniformity in federal maritime wrongful death actions only require that standards of liability be exclusively determined by federal maritime law and that, once such liability has been shown, there is no antagonism to such a policy in supplementing federal remedies with those available under otherwise applicable state law.

*O'Hara v. Celebrity Cruises, Inc*., 979 F. Supp. 254, 256 (S.D.N.Y. 1997).

8

The method of apportioning fault is not a standard of liability but a defense. A standard of liability would be the duty of reasonable care under the circumstances (negligence) or the duty to provide a ship that is reasonably fit for its intended purpose (unseaworthiness). The defense of contributory negligence has no bearing on the standard of liability of the defendant, but rather, on the apportionment of fault as it relates to the amount of damages recoverable by the plaintiff. Put another way, apportionment of fault is based upon defenses that have no bearing on the liability of the defendant, but rather, the apportionment of fault. Liability relates to fault, which is defined as a "breach of duty as an element of the tort of negligence." FAULT, Black's Law Dictionary (11th ed. 2019).

Comparative negligence and contributory negligence are affirmative defenses which reduce the amount of damages a plaintiff may recover. *See, e.g., Barto v. Shore Const., L.L.C.,* 801 F.3d 465, 472 (5th Cir. 2015). The method of apportioning is applied only after liability is established. Fault only relates to the amount of damages recoverable when/if a defendant is found liable.

Plaintiffs also argue that applying the Texas apportionment of fault rule "would break maritime law's uniform comparative fault scheme and subject admiralty cases to different rules depending on the state of occurrence." But, this is exactly the argument the Third Circuit and the Supreme Court rejected in the *Yamaha* decision:

> Yamaha's claim basically boils down to the following proposition: state wrongful death statutes cannot apply to deaths to recreational boaters in territorial waters because it would raise the possibility of different remedies depending on the location of the accident and the citizenship of the parties… The argument simply proves too much. "All state laws, if given effect in admiralty cases, interfere to a degree with the uniformity of admiralty law." 1 BENEDICT ON ADMIRALTY § 112, at 7–36.

*Calhoun v. Yamaha Motor Corp., U.S.A., 40* F.3d 622, 643 (3d Cir. 1994), aff'd, 516 U.S. 199, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996).[7]

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

*/s/ James T. Brown*
James T. Brown
ATTORNEY-IN-CHARGE FOR
MAERSK LINE, LIMITED, *in personam*
Defendant, and as the owner of the *M/V Maersk Idaho*, *in rem* Defendant
Texas Bar No. 03138150
Federal ID. No. 11656
5151 San Felipe, Suite 400
Houston, Texas 77056
Jim.Brown@hfw.com
Telephone: 713-917-0888
Facsimile: 713-953-9470

---

[7] Additionally, the need for uniformity is diminished because this case does not involve maritime commerce. *See, e.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 544 (1995) (the basic rationale for federal admiralty jurisdiction is "protection of maritime commerce through uniform rules of decision.").

OF COUNSEL:
HOLMAN FENWICK WILLAN USA LLP
Thomas N. Lightsey III
Texas Bar No. 12344010
Federal ID No. 84829
tom.lightsey@hfw.com
Christopher R. Hart
Texas Bar No. 09136310
Federal ID No. 12517
chris.hart@hfw.com
Alejandro Mendez-Roman
Texas Bar No. 24102778
Federal ID No. 2295449
Alex.mendez@hfw.com

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served on this 23rd day of December 2020 to all counsel of record via this Court's Electronic Document Filing System:

                                            */s/James T. Brown*
                                            James T. Brown