United States District Court
Southern District of Texas
**ENTERED**
May 07, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JANA REED, *individually and as Representative of the Estate of Christopher Reed and on behalf of A.R.*, ET AL., | § § § § § | |
| Plaintiffs. | § § | |
| VS. | § | CIVIL ACTION NO. 3:19-cv-00238 |
| MAERSK LINE, LIMITED, ET AL., | § § § | |
| Defendants. | § | |

## ORDER AND OPINION

There are several pre-trial motions that must be resolved before the parties start trial before United States District Court Judge Jeffrey V. Brown on May 17, 2021. *See* Dkts. 77, 78, and 91. My analysis of the pending issues and my rulings are detailed below.

## BACKGROUND

On June 7, 2019, Christopher Reed and his wife, Jana Reed, were enjoying a peaceful day in Galveston Bay when their fishing boat was allegedly rocked by the wake from the *M/V Maersk Idaho*, a container ship travelling up the Houston Ship Channel. According to the allegations set forth in the Third Amended Complaint, the impact of the wake caused Christopher to fall overboard into the water. Jana's attempts to rescue her husband were unsuccessful, and Christopher did not survive. His body was recovered two days later.

Jana, individually and as a representative of Christopher's estate, and the Reeds' three surviving children, Alexis, Chase, and Logan, filed this wrongful death lawsuit against Maersk Line, Limited and *M/V Maersk Idaho, In Rem*.

# THE PRE-TRIAL MOTIONS

## A. Maersk's Motion to Limit, Or Alternatively, Withdraw From, Joint Stipulation Filed by Plaintiff (Dkt. 77).

One of the key issues in this case is the elevation change the Reeds' boat experienced at the time Christopher Reed ("Reed") fell overboard. Plaintiffs contend that he was thrown overboard when the Reeds' boat underwent an enormous elevation change as a result of the *Maersk Idaho's* wake. Defendants, on the other hand, argue that the wake generated by the *Maersk Idaho* was minimal, making it implausible that the *Maersk Idaho's* wake ejected Reed from his boat.

As part of the discovery process, the parties obtained navigation data from three separate navigation devices. One of those devices was Reed's cell phone, which was synchronized to a GPS navigation system on board his boat. Reed's cell phone uploaded various data to the Cloud, where it was maintained on a Navionics' server (cloud-based internet storage). Plaintiffs provided the fully downloaded Navionics data to Defendants on March 10, 2020. This raw data included latitude, longitude, speed, heading, and—most important to this discussion—elevation change data.

On June 6, 2020, after each side had roughly three months to review and analyze the Navionics data, the parties agreed to the following:

> [W]e will stipulate that the navigation data from: (1) MAERSK IDAHO ECDIS, (2) Capt. Marcus Maher's PPU/Raven unit, and (3) Reed's Navionics electronic chart software you obtained from the cloud (not whatever may have been downloaded from the hard-wired unit itself on the boat) **fairly and accurately represent the positions/speeds of the vessels.**

Dkt. 77-3 at 2 (emphasis added).

In early November 2020, after the discovery period had ended, Defendants filed the instant Motion to Limit, or Alternatively Withdraw From, Joint Stipulation Filed by Plaintiff ("Motion to Set Aside Stipulation"). *See* Dkt. 77. In their motion, Defendants ask me to limit the stipulated navigational data to each vessel's latitude, longitude, and speed—or alternatively, strike the stipulation in its

entirety. In response, Plaintiffs argue that Defendants should not be allowed to escape that binding stipulation at this late date because:

> Plaintiff[s'] experts have relied on that stipulation as an established fact of the case; and Defendants did not seek to withdraw this stipulation until the conclusion of all discovery when the case is substantially ready for trial. Plaintiffs would be unduly prejudiced if the stipulation is allowed to be withdrawn.

Dkt. 79 at 6.

"Factual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677–78 (2010) (cleaned up). As a leading legal reference explains:

> Factual stipulations are binding and conclusive, and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, or to maintain a contention contrary to the agreed statement, or to suggest, on appeal, that the facts were other than as stipulated or that any material fact was omitted. The burden is on the party seeking to recover to show his or her right from the facts actually stated.

*Id.* (cleaned up) (quoting 83 C.J.S., Stipulation, § 93 (2000)). Once made, a stipulation will generally be enforced. *See United States v. McKinney*, 758 F.2d 1036, 1047 (5th Cir. 1985) ("A stipulation among the parties to a lawsuit is akin to a contract."). That said, a district court "has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . . or where there is substantial evidence contrary to the stipulation." *Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249, 262–63 (5th Cir. 2010) (quoting *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1369 (5th Cir. 1983)).

Here, the parties stipulated that the navigation data from Reed's Navionics electronic chart software "fairly and accurately represent[s] the positions/speeds of the vessels." Dkt. 77-3 at 2. In an effort to side-step the stipulation, Defendants contend that they "understood the stipulation as to the 'position' of the vessel to

3

only include the latitude and longitude of the vessels," not the altitude or elevation of the vessels. Dkt. 77 at 15. Defendants' argument does not hold water. The ordinary meaning of the term "position" is "the point or area occupied by a physical object." *Position*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/position (last visited May 5, 2021). This definition is not limited to latitude and longitude information on a two-dimensional plane, but unquestionably includes elevation data which can identify the exact location of the vessel at the time of the accident.

Defendants' counsel maintains that in his long and illustrious career as a professional mariner and top-flight admiralty lawyer, he had never encountered—until now—a ship's navigation system that provided information about the altitude of a ship to fix position. That may be true, but Defendants had months to review the raw Navionics data provided to them. That data unquestionably included elevation change information. This is not a situation in which Plaintiffs concealed data from Defendants, and then lured them with an enchanting Siren's song into a rocky stipulation concerning that data. Defendants had months to review and analyze the Navionics data, and they went ahead and stipulated to the accuracy of the Navionics data with respect to "the positions/speeds of the vessels." Dkt. 77-3 at 2. It's hard to sympathize with Defendants' assertion that they were not aware of any altitude data when they agreed to the stipulation.

Aside from having the opportunity to review the data for months, Defendants were fully aware that the Navionics data was downloaded from a GPS device. As is common knowledge, GPS is "a navigational system using satellite signals to fix the location of a radio receiver **on or above the earth's surface**." *GPS*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/GPS (last visited May 5, 2021) (emphasis added).[1]

---

[1] As an aside, Defendants' counsel drafted the stipulation and he easily could have limited its reach to longitude and latitude data, excluding all other forms of data. The stipulation, however, is not so limited.

4

Having discussed the scope of the stipulation, the next issue I must address is whether holding Defendants to the stipulation would be manifestly unjust. Given the posture of this case, I am actually concerned that manifest injustice would occur if I *relieved* the parties of their obligations under the stipulation. As Plaintiffs convincingly explain:

> Three of Plaintiffs['] experts relied on this stipulation in forming their opinions. It would be patently prejudicial if the foundation of those opinions are now attacked because Maersk moves to withdraw from its stipulation and Plaintiffs must prove up the accuracy of the elevation change data. Discovery is now over. The time for filing rebuttal expert reports is well past. Yet Defendants waited until November 4, 2020—239 days after receiving GPS data, and 141 days after entering into the stipulation to try and withdraw from it. Nero fiddled while Rome burned.

Dkt. 79 at 8. Defendants take the position that the underlying elevation data is not accurate, but that flies in the face of the stipulation. Although I possess broad discretion to set aside a stipulation, I am unwilling to do so here. *See Coastal States Mktg.*, 694 F.2d at 1369. The parties agreed to the reliability of the Navionics data on the positions and speeds of the vessels. This expressly includes the Navionics elevation data. That agreement should be respected. Defendants' Motion to Set Aside Stipulation (*see* Dkt. 77) is **DENIED**.[2]

**B.   Maersk's Motion for Application of Texas Civil Practice and Remedies Code Chapter 33 (Dkt. 78).**

Next, the parties dispute whether general maritime law's pure comparative fault principles or the Texas proportionate responsibility statute applies in this case. Defendants have filed a motion claiming that the Texas Proportionate

---

[2] Earlier this week, I held that Dr. Dick Yue could testify at trial as a rebuttal naval architect expert. *See* Dkt. 108. That decision was issued before I had considered whether to enforce the parties' stipulation that the navigation data from Reed's Navionics electronic chart software accurately represents the position and speed of the Reeds' fishing boat. I am, admittedly, uncertain how, if at all, the stipulation at issue here impacts Dr. Yue's testimony. My initial reaction is that Dr. Yue would not be able to offer testimony at trial challenging the accuracy of the Navionics data, but I will defer to Judge Brown to exercise his role as a gatekeeper at trial.

Responsibility Act applies.[3] *See* Dkt. 78. Plaintiffs strongly disagree, arguing that federal maritime law's pure comparative fault principles are appropriate. *See* Dkt. 87.

By way of background, federal maritime law employs a pure comparative negligence standard, under which damages are apportioned according to the relative fault of each party. *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953). Importantly, a plaintiff is entitled to damages even if he is found to be more than 50 percent at fault, although the damages awarded will be reduced by the percentage of fault attributable to the plaintiff. *See Johnson v. Carnival Corp.*, No. 07-20147-CIV-UNGARO, 2007 WL 9624457, at *3 (S.D. Fla. Dec. 10, 2007) ("[A] plaintiff's negligence, when constituting less than 100% of the combined fault, may only be considered in mitigation of damages and not as a complete bar to recovery.").

In stark contrast to the pure comparative negligence scheme, the Texas proportionate responsibility statute provides that "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." TEX. CIV. PRAC. & REM. CODE § 33.001. If the plaintiff is less than 50 percent responsible, his recovery is reduced by his percentage of fault. *Id.* § 33.012(a) ("If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.").

The particular legal question raised here—whether, in a suit involving the death of a non-seaman in state waters, the district court should evaluate the comparative fault of the parties under the Texas Proportionate Responsibility Act

---

[3] The Texas Proportionate Responsibility Act is found at Chapter 33 of the Texas Civil Practice and Remedies Code. Chapter 33 applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." TEX. CIV. PRAC. & REM. CODE § 33.002(a)(1).

and its 51 percent contributory negligence bar to recovery, or under the pure comparative fault scheme of federal maritime law—becomes relevant only if Judge Brown eventually determines at trial that Reed is more than 50 percent at fault. Otherwise, my thoughts on which standard should apply are purely academic, offering no real benefit to the parties involved here. Instead of conducting an in-depth analysis at this juncture, I think the best approach is to let Judge Brown address the issue in the event he ultimately determines that Reed was more than 50 percent at fault. As a result, I defer any ruling on Plaintiffs' Motion for Application of Texas Civil Practice and Remedies Code Chapter 33. The motion will be carried with the case.

## C.  Maersk's Motion for Application of the *Pennsylvania* Rule (Dkt. 91).

The *Pennsylvania* rule is a long-established principle of admiralty law. The Fifth Circuit succinctly explained the current state of the rule as follows:

> The rule of *The Pennsylvania* has its origin in a seminal admiralty case, in which the Supreme Court established the burden-shifting presumption for causation when a vessel at the time of a collision is in actual violation of a statutory rule intended to prevent collisions. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, *but that it could not have been*. The rule thus creates a presumption that one who violates a regulation intended to prevent collisions will be deemed responsible. The presumption, however, is rebuttable and applies only to violations of statutes that delineate a clear legal duty.

*Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland, L.L.C.*, 716 F.3d 886, 891 (5th Cir. 2013) (quotations omitted).

In their Motion for Application of the *Pennsylvania* Rule, Defendants contend that Reed violated multiple relevant safety statutes. According to Defendants, these safety violations included the following:

- Reed operated his boat while under the influence of THC in violation of state and federal law.

- Reed failed to have a throwable Personal Floatation Device immediately accessible in violation of state and federal statutes.

- Reed recklessly operated his boat by navigating through the wake fields of the *Maersk Idaho*.

- Reed violated federal regulations by failing to keep a proper lookout by all available means appropriate so as to make a full appraisal of the situation and of the risk of collision.

- Reed failed to have his VHF radio turned on and set to an appropriate Digital Select calling channel, as required by federal regulations.

As a result of these alleged violations of state and federal law, Defendants ask that the *Pennsylvania* burden-shifting presumption be applied; the violation of these statutes be presumed to have established causation; and to rebut the presumption, Plaintiffs be required to show by clear and convincing evidence that the violations could not have caused or contributed to the incident.

Plaintiffs disagree, arguing the *Pennsylvania* rule is inapplicable for a variety of reasons. To begin, Plaintiffs observe that the "'*Pennsylvania* rule applies only to violations of statutes that delineate a clear legal duty, not regulations that require judgment and assessment of a particular circumstance.'" Dkt. 96 at 6 (emphases omitted) (quoting *Tokio Marine & Fire Ins. Co. v. FLORA MV*, 235 F.3d 963, 966 (5th Cir. 2001)). Because many of the statutes and regulations Reed purportedly violated simply restate the common law negligence standard of care, and "require judgment and assessment of a particular circumstance," *Tokio Marine*, 235 F.3d at 966, Plaintiffs insist that the referenced statutes and regulations are not subject to the *Pennsylvania* rule. Additionally, Plaintiffs note that the *Pennsylvania* rule is limited to violations of statutes intended to prevent the catastrophe that actually occurred. Applying that rule here, Plaintiffs assert that several of the statutes at issue (the Personal Floatation Device and VHF radio statutes) were not meant to prevent Reed from being ejected from his boat. The result, according to Plaintiffs, is that the *Pennsylvania* rule is of no moment.

In reviewing the parties' submissions, I was struck by the extensive discussion concerning the underlying merits of each side's respective positions. To be blunt, I am reluctant to make a decision in the run-up to trial based on an incomplete factual record when we are a little over a week from a full trial on the merits. Instead of determining at this stage of the proceedings whether a rebuttable presumption should apply, the more reasoned approach would be to give both parties a full opportunity to present witnesses and evidence at trial. Once that takes place, the Court will be in a much better position to judge what presumptions, if any, are appropriate. This approach is consistent with how many courts across the country handle motions requesting the application of the *Pennsylvania* rule before trial. *See M/V Admiral Bulker v. United Bulk Terminals Davant*, 397 F. Supp. 3d 826, 837 (E.D. La. 2019) ("declin[ing] to apply the presumptions in resolving the motions for summary judgment"); *McLean v. Carnival Corp.*, No. 12-24295-CIV, 2013 WL 1024257, at *5 (S.D. Fla. Mar. 14, 2013) (application of the *Pennsylvania* rule "is more properly considered at a later stage of the proceedings"); *Scouten v. NCL (Bahamas) Ltd.*, No. 08-21485-CIV-MORENO, 2009 WL 10692716, at *2 (S.D. Fla. Mar. 4, 2009) (application of the *Pennsylvania* rule before trial is premature). For this reason, Defendants' Motion for Application of the *Pennsylvania* Rule is **DENIED** without prejudice. The parties are free to re-raise the presumption issue at trial.

## CONCLUSION

For the reasons provided above, Defendants' Motion to Set Aside Stipulation (Dkt. 77) is **DENIED**; Defendants' Opposed Motion for Application of Texas Civil Practice and Remedies Code Chapter 33 (Dkt. 78) is carried with the case; and Defendants' Motion for Application of the Pennsylvania Rule (Dkt. 91) is **DENIED** without prejudice to re-raising at trial.

SIGNED this 7th day of May 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE